UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TENSTREET, LLC, | ) |
|       Plaintiff, | ) |
| v. | )  No. 1:18-cv-03633-JRS-TAB |
| DRIVERREACH, LLC, | ) |
|       Defendant. | ) |

**Order on Motion for Attorneys' Fees**

Tenstreet, LLC ("Tenstreet") sued DriverReach, LLC ("DriverReach"), alleging infringement of U.S. Patent No. 8,145,575 (the "'575 Patent"). The Court granted DriverReach's motion to dismiss Tenstreet's claims. (ECF No. 63.) DriverReach now moves to recover reasonable attorneys' fees from Tenstreet under 35 U.S.C. § 285, (ECF No. 94), and to strike five of Tenstreet's declarations, (*see* ECF Nos. 114–18), which it argues are untimely, (ECF No. 120). For the following reasons, DriverReach's motion for attorneys' fees is denied and its motion to strike is denied as moot.

## I. Background

On November 20, 2018, Tenstreet filed suit against DriverReach alleging infringement of Tenstreet's patent for Xchange, the '575 Patent. (Compl. ¶ 11, ECF No. 1 at 3.) Specifically, Tenstreet alleged that DriverReach infringed the '575 Patent by selling its own employment verification product, VOE Plus Solutions. (Compl. ¶ 2, ECF No. 1.) DriverReach moved to dismiss, contending that the '575 Patent was

patent-ineligible subject matter under 35 U.S.C. § 101. (ECF No. 14.) On September 30, 2019, the Court granted DriverReach's motion and dismissed Tenstreet's claims on the merits with prejudice, holding that Tenstreet failed to state a claim upon which relief could be granted because the claims of the '575 Patent were patent-ineligible under § 101 and therefore invalid. *Tenstreet, LLC v. DriverReach, LLC*, 417 F. Supp. 3d 1144, 1152 (S.D. Ind. 2019), *aff'd*, 825 F. App'x 925 (Fed. Cir. 2020). Final judgment was entered on the same date. (ECF No. 64.)

DriverReach filed its first motion for attorneys' fees on October 15, 2019, (ECF No. 66), which the Court denied without prejudice pending Tenstreet's appeal of the case, (ECF No. 90). After the Federal Circuit affirmed the Court's holding, DriverReach filed its renewed motion. (ECF No. 94.) DriverReach argues that this is an exceptional case within the meaning of 35 U.S.C. § 285.

## II.     Legal Standard

The Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* A nonexclusive list of factors to consider includes frivolousness, motivation, objective unreasonableness as

to facts or legal components of the case, and the need in particular circumstances to advance considerations of compensation and deterrence. *See Octane Fitness*, 572 U.S. at 554 n.6. The prevailing party must prove an "exceptional case" by a preponderance of the evidence. *See id.* at 557–58.

Fees are not to be awarded "as a penalty for failure to win a patent infringement suit." *Octane Fitness*, 572 U.S. at 548–49 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). And, "[i]n view of the evolving nature of § 101 jurisprudence . . . it is particularly important to allow attorneys the latitude necessary to challenge and thus solidify the legal rules without the chill of direct economic sanctions." *Gust, Inc. v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1329 (Fed. Cir. 2018).

### III.   Discussion

It is undisputed that DriverReach was the prevailing party because the Court granted its motion to dismiss. The only issue is whether this case is exceptional. DriverReach argues that this is an exceptional case because Tenstreet's case lacked substantive strength and because Tenstreet used unreasonable litigation tactics. The Court addresses these in order and finds that this is not an exceptional case.

*A. Weakness of Tenstreet's Litigation Position*

DriverReach fails to show that this is an exceptional case based on the substantive weakness of Tenstreet's litigation position. DriverReach contends that Tenstreet should have known its case was objectively unreasonable from the beginning, and that its case was weak because (1) DriverReach explained to Tenstreet the § 101

3

issues in a pre-suit correspondence, citing the same body of caselaw that the Court relied on in granting DriverReach's motion to dismiss; and (2) in 2014, Tenstreet's related patent application, U.S. Patent Application No. 14/046,269 ("'269 Application"), which was a continuation of the '575 Patent, was rejected entirely under § 101 in view of *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). Exceptionality is commonly shown by "(1) establishing that the plaintiff failed to conduct an adequate pre-filing investigation or to exercise due diligence before filing suit; [or] (2) showing the plaintiff should have known its claim was meritless and/or lacked substantive strength . . . ." *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 12-256, 2015 WL 1197436, at *4 (D. Del. Mar. 15, 2015), *aff'd*, 851 F.3d 1302 (Fed. Cir. 2017) (internal citations omitted). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 572 U.S. at 555.

DriverReach argues that Tenstreet failed to objectively assess the merits of its case. Specifically, DriverReach asserts that it provided Tenstreet with notice that the '575 Patent was likely invalid in a pre-suit correspondence letter, and, therefore, Tenstreet should have known its claim lacked substantive strength. DriverReach's four-page, pre-suit letter indicated the reasons it believed that the '575 Patent was invalid: namely, that the '575 Patent and the claims thereof were directed to the abstract idea of collecting and exchanging employment-related information; that the only computer component in Claim 1 was a generic computerized exchange; and that the '575 Patent and its claims were precisely the type of patents/claims that the

4

Federal Circuit consistently holds invalid. (ECF No. 96-3 at 3.) Additionally, DriverReach cited in its letter several cases to support its assertions. But, it is unremarkable that opposing counsel disagreed about the merits of their respective positions prior to and during litigation. The Court is not persuaded that this pre-suit correspondence letter proves that Tenstreet knew its claims were meritless. *Cf. Auto-Kaps, LLC v. Clorox Co.*, 15 Civ. 1737, 2017 WL 6210846, at \*2 (E.D.N.Y. Mar. 27, 2017) (concluding that a case was not baseless despite the defendant having outlined the arguments that ultimately prevailed on summary judgment in a pre-litigation letter to the plaintiff).

DriverReach also cites the '269 Application's rejection as evidence that Tenstreet knew its claims were baseless. Specifically, DriverReach argues that the asserted '575 Patent was prosecuted before the Supreme Court's decision in *Alice* and thus was not subject to the same level of scrutiny on § 101 as the '269 Application; that the asserted '269 Application sought claims nearly identical to the asserted claims in this case, the only difference being that the '269 Application sought "system" claims instead of "method" claims; and that the '269 Application was rejected entirely under § 101 in view of *Alice*. Tenstreet responds that the '269 Application rejection does not show that Tenstreet was unreasonable in asserting the '575 Patent because Tenstreet ultimately decided to abandon the '269 Application without receiving a final and unappealable rejection. Also, the § 101 standard has continued to evolve since 2014, when the '269 Application was rejected in the immediate aftermath of *Alice*. Thus, it is unclear if Tenstreet could have overcome the rejection. The Court did not speculate

5

on the ultimate eligibility of those claims in ruling on the motion to dismiss, (ECF 63 at 11), and it declines to speculate now.

DriverReach also analogizes to a line of cases to show Tenstreet's case was objectively unreasonable from the beginning. However, the cases are distinguishable. For example, in *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017), the Federal Circuit held that the district court did not abuse its discretion in awarding attorney's fees, *id* at 1379–80, because the case did "not require [it] to engage in a difficult line-drawing exercise for a claimed invention resting on, or anywhere near, the margins of patent-eligibility; rather, the patent claims [were] directed to a fundamental economic practice, which *Alice* made clear is, without more, outside the patent system," *id.* at 1379. In *In re Bill of Lading Transmission & Processing Systems Patent Litigation v. Intermec Technologies Corp.*, No. 109-MD-2050, 2018 WL 2578225, at *1 (S.D. Ohio June 4, 2018), the court held that an award of attorneys' fees was warranted because the claims were "dubious". *Id.* at *4. The litigation spanned eight years and included three appeals; the court found that an award of attorneys' fees was needed to deter future wasteful litigation on similarly weak arguments pertaining to plaintiff's non-patentable invention. *Id*. The '575 patent is not directed to a fundamental economic process, but rather, is directed at "peer-to-peer sharing of job applicant data over a network." ('575 Patent, ECF No. 1-1 at 5:39–40.) And Tenstreet has not pursued its losing claims anywhere near the extent of the protracted litigation at issue in *Bill of Lading*.

6

And, in *SAP America Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 WL 993854, at *1 (N.D. Tex. Feb. 21, 2018), the plaintiff was specifically warned by the U.S. Patent and Trademark Office ("USPTO") that "it looked very unlikely that [its] claims were toward patentable subject matter and very likely that [its] claims were invalid. *Id.* at *2. The USPTO then specifically invited the plaintiff to address the issues in another post-grant review proceeding of the patent; however, the plaintiff ignored the issues and instead continued to "vigorously assert" its patent against companies like the defendant's. *Id.* The Court held that attorney's fees were warranted given the totality of the circumstances. *Id.* DriverReach argues that Tenstreet was similarly warned that the '575 Patent was likely invalid because its '269 Application was denied post-*Alice*. However, the Court reiterates that Tenstreet's abandoning of the '269 Application makes it unclear whether Tenstreet would have overcome the rejection.

The additional cases that DriverReach argues are comparable to this case, and in which courts found exceptionality, are also distinguishable. *See Finnavations LLC v. Payoneer, Inc.*, No. 1:18-cv-444-RGA, 2019 WL 1236358, at *1–2 (D. Del. Mar. 18, 2019) (finding exceptionality because there was no question, and the court had "rarely been more confident," that the patent was invalid because the claims were analogous to those struck down in *Alice*); *VOIT Techs., LLC v. Del-Ton, Inc.*, No. 5:17-CV-259, 2018 WL 3732671, at *1 (E.D.N.C. Aug. 6, 2018) (finding exceptionality because plaintiff was "fishing for settlements" when it "filed suit based on the expired patent held invalid [by the court] 37 times in fifteen months"); *Source Search Techs., LLC v.*

7

*Kayak Software Corp.*, No. 11-3388, 2016 WL 1259961, at *1 (D.N.J. Mar. 31, 2016) (finding exceptionality because plaintiff changed its position "back and forth to suit the argument of the day" and plaintiff did not discontinue its litigation after defendant filed its motion for summary judgment post-*Alice*); *Bayer CropScience AG*, 2015 WL 1197436, at *9–10 (finding patentee's infringement claim plainly non-meritorious where, among other things, it was considered baseless by several of its own witnesses); *eDekka LLC v. E Revolutions Ventures, Inc.*, Nos. 2:15-CV-541, 2:15-CV-585, 2015 WL 9225038, at *1 (E.D. Tex. Dec. 17, 2015) (finding exceptionality because plaintiff's patent was "demonstrably weak on its face," given that the claims were not tied to a generic computer, let alone a specialized one; the plaintiff "repeatedly offered unsupportable arguments on behalf of [its] obviously weak patent"; and plaintiff filed over 200 strikingly similar law suits that led to early settlements for amounts significantly below the cost of taking a patent case to trial).

DriverReach has not demonstrated by a preponderance of the evidence that this case "stands out from others with respect to the substantive strength of [Tenstreet's] litigating position . . . ." *Octane Fitness*, 572 U.S. at 554. And "it is the substantive *strength* of the party's litigating position that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position. A party's position on issues of law ultimately need not be correct for them to not stand out, or be found reasonable." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (internal quotation marks and citations omitted); *see also Gust*, 905 F.3d at 1329.

Tenstreet's '575 patent was entitled to a presumption of validity, and Tenstreet attempted to enforce that patent in this action. In dismissing Tenstreet's claims, the Court observed that the '575 patent "is a 'quintessential do it on a computer patent,'" (Order on Motion to Dismiss 8, ECF No. 63), but the Court did not conclude that Tenstreet's claims failed just because similar patents had been held invalid. Nor did the determination that the '575 patent was directed to an abstract idea by itself doom the claims. Rather, the Court determined that the '575 patent lacked "an inventive concept," which is required to make the abstract idea patent-eligible. (*Id.* at 7, ECF No. 63.) Tenstreet's claims were dismissed, but especially given the state of flux of §101 law, *see, e.g.*, *Gust*, 905 F.3d at 1329, the Court does not find this case exceptional based on the weakness of Tenstreet's litigation position.

B. *Unreasonable Manner in Which the Case Was Litigated*

DriverReach has not established exceptional conduct by a preponderance of the evidence. "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. 546. Examples of misconduct that support a court's exceptional case finding include "litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit; or willful infringement." *Monolithic Power Sys. Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013). Indeed, post-*Octane* decisions finding exceptionality for conduct have generally relied on egregious behavior. *See, e.g.*, *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 853 (N.D. Ill. 2014) (finding

9

exceptionality based on plaintiff's conduct of falsifying declarations before the USPTO to obtain the patents at issue); *JOAO Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 12-1138, 2016 WL 1267159, at *1 (D. Del. Mar. 31, 2016) (finding exceptionality based on plaintiff's conduct after it originally asserted infringement for over eighty products, narrowed the accused products to seven by court order, and changed the representative products four times by the time it served its final infringement contentions in which plaintiff ultimately asserted six never-before asserted claims.)

DriverReach cites six examples of Tenstreet's litigation conduct that support a finding of exceptionality: (1) Tenstreet's confusing and tenuous settlement demand stalled any possible resolution of the case; (2) Tenstreet wasted valuable resources during the course of the litigation; (3) Tenstreet's infringement contention positions were contrary to law; (4) Tenstreet's failure to comply with Court orders increased the cost of litigation; (5) Tenstreet had an improper motive for bringing suit, and (6) Tenstreet's baseless positions on the relevance of source code punctuated its campaign for unreasonable behavior.  Because the Court may determine exceptionality by considering the totality of the circumstances, the Court takes these examples together. *See Octane Fitness*, 572 U.S. at 554.

DriverReach asserts that Tenstreet began the discovery period by asserting a damages theory without any legal foundation and repeatedly refusing to explain or support its theory.  Specifically, DriverReach points to the fact that Tenstreet alleged millions of dollars in lost profits yet did not provide satisfactory reasoning for its

10

alleged lost profits. Tenstreet counters that it made every effort to explain the basis for its settlement demand and preliminary damages calculation. However, part of the reason that Tenstreet and DriverReach could not come to an agreement about the initial settlement demand was because there was a disagreement about whether Xchange was offered for free—thus causing confusion about how such a large settlement demand could be requested based on lost profits of a free product. Tenstreet claims that there are two versions of Xchange: one that is offered for free and one full version that is offered for a price. (Riddle Decl. ¶ 8, ECF No. 99 at 2.)

DriverReach, however, maintains that Xchange is a free product and that Tenstreet asserted a convoyed sales theory, which is contrary to law because Tenstreet's Xchange is a separate, distinct stand-alone product. *See Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) ("A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale, if both the patented and unpatented products 'together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit.'" (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1998))). DriverReach points to email correspondence between itself and Tenstreet to support its assertion. (*See* ECF No. 96-6 at 2–3 (Tenstreet stating that "[a]s for lost profits, Tenstreet profits from its Xchange software because it is integrated with other services that Tenstreet sells, and Xchange is a significant driver of demand for those products").) Thus, Tenstreet contradicted itself during the course of this litigation regarding the damages theory it was advancing. However,

given that the case ended at the motion to dismiss stage, and that discovery never finished; whether Tenstreet had a viable lost profit damages claim depends on an unresolved factual dispute. (*See* Riddle Decl. ¶ 8, ECF No. 99 at 2 (stating that when the case was dismissed, Tenstreet "was in the process of producing hundreds of invoices demonstrating that it charged for [its] full version of Xchange").) Since DriverReach has not proffered a good reason to resolve the factual dispute in its favor, it has failed to meet its burden of proof.

Next, DriverReach claims that Tenstreet wasted resources by continuing to object to certain interrogatories. But Tenstreet argues that some of DriverReach's interrogatories contained too many discreet subparts to answer. DriverReach responds that it repeatedly asked Tenstreet to explain its objections, which Tenstreet failed to do. Eventually, Tenstreet answered the interrogatories after compromising right before a conference with the magistrate judge. DriverReach argues that it should not have taken six months of discussions, including emails, three formal letters, three meet and confers, and a compromise, to answer interrogatories pertaining to basic information on products that a patent infringement plaintiff contends practice the claimed invention.

DriverReach argues that Tenstreet's conduct was like conduct in other cases in which courts found a party's litigation conduct exceptional. However, the Court is not persuaded. For example, in *Fleming v. Escort, Inc.*, No. 1:09-CV-105-BLW, 2014 WL 713532, at *2 (D. Idaho Feb. 21, 2014), the defendant, among other conduct the court found to be vexatious, failed to turn over numerous pieces of discoverable

12

information, attempted to add 286 patent invalidity contentions over eighteen months after the deadline for amendment had passed, and "vehemently objected to turning over sensitive trade secrets in discovery only to later allow the same 'secrets' to be publicly disclosed at trial." Here, that Tenstreet was not as forthcoming as it should have been, does not rise to the level of the defendant's conduct in *Fleming*. DriverReach also cites *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (Fed. Cir. 1981), but the conduct at issue there also was far more severe than Tenstreet's. The plaintiff in *Loctite*, over the course of three years, only partially answered interrogatories, concealed evidence, instructed its personnel to not make written reports of test results, made material misrepresentations in briefs, and failed to comply with court orders compelling discovery. *Loctite*, 667 F.2d at 584. That conduct is distinguishable from Tenstreet's.

DriverReach also argues that Tenstreet's infringement contentions were contrary to law, as demonstrated by Tenstreet's inability to cite to a single case supporting its position. Specifically, DriverReach takes issue with Tenstreet's attempt to add DriverReach's Application Management System and Driver Compliance Management System as "Accused Instrumentalities." (*See* ECF No. 96-11 at 1–2.) This is because DriverReach asserted during the course of the litigation that all of its "products are separate and distinct products with separate and distinct functionalities; therefore, to properly accuse them of infringing the asserted method, Tenstreet needed to explain how using those unique features and functionalities practiced the claimed methods." (ECF No. 95 at 30 (citing *Lucent Techs., Inc. v.*

13

*Gateway Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2019) (explaining that "[t]o infringe a method claim, a person must have practiced all steps of the claimed method")).)

Tenstreet, responds that DriverReach's own website stated that the services Tenstreet added as Accused Instrumentalities "include VOE Plus and [the website] included case studies that describe[d] VOE Plus as part of a 'holistic' system that is 'an end-to-end solution for [the] driver recruiting process." (ECF No. 98 at 35.) Thus, there was a factual dispute between the parties. (*Compare* ECF No. 96-17 at 1 (DriverReach stating "VOE Plus is a standalone product, as your own document production establishes"), *with id.* at 4 (Tenstreet responding "Although you have stated that the other products do not include the charted services, that is contrary to statements on DriverReach's website, and you have not provided any evidence to support your position. Accordingly, as I stated before, the cases you requested are irrelevant.").) DriverReach claimed there was no factual dispute; rather, it argued that Tenstreet's "contentions [were] deficient because they [did] not chart the 'Accused Instrumentalities' and instead rel[ied] on a theory that [was] incorrect as a matter of fact and law," and that DriverReach was not aware of "any case law to support [Tenstreet's] attempts to assert infringement of a method claim in this manner." (ECF No. 96-16 at 3.) Pointing to the status conference held on September 16, 2019, DriverReach contends that the magistrate judge agreed with DriverReach that Tenstreet's contentions were improper. (ECF No. 62.) Accordingly, the magistrate judge gave Tenstreet until October 3, 2019, to supplement its contentions and claims charts. (*Id.*) However, DriverReach's motion to dismiss was granted on

14

September 30, 2019. (ECF No. 63.) The Court will not speculate as to whether Tenstreet would have been able to adequately supplement its contentions and claims charts.

DriverReach next asserts that Tenstreet did not comply with the Electronically Stored Information ("ESI") Order because it did not produce its documents according to the specific list of metadata fields listed in the order, (*see* ECF No. 49 at 5). Tenstreet blames the discrepancy with metadata on its third-party vendor. DriverReach's authority for why Tenstreet's failure to comply with the ESI Order warrants a finding of exceptionality is distinguishable. In *Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1372 (Fed. Cir. 2015), Oplus's litigation strategy included misconduct such as providing contradictory expert testimony and multiple subpoenas for financial information, requesting discovery previously provided, and amending its claims to manufacture venue. Tenstreet's failure to remedy its metadata mistake is not comparable to the conduct in *Oplus Technologies*.

DriverReach also complains that Tenstreet improperly used the threat of a patent infringement action to gain a competitive advantage, even going so far as to inform potential DriverReach customers that the lawsuit would bankrupt DriverReach as a way of dissuading them from doing business with DriverReach. To support its assertions of improper motive, DriverReach cites to its own complaint filed in the Northern District of Oklahoma and a letter written by DriverReach's own lawyer. (*See* Compl. ¶¶ 14–20, *DriverReach LLC v. Tenstreet, LLC*, No. 18-cv-0650 (N.D. Okla.), ECF No. 96-3 at 4–5; ECF No. 96-3 at 4.) DriverReach also argues that its

15

motion should be granted because Tenstreet did not in its response brief dispute its motive (although Tenstreet did address it in a supplemental brief). But, a complaint's factual allegations are not evidence; nor, generally, is a cease-and-desist letter based on hearsay from a party's lawyer. In any event, though this may be a close case, the Court is not persuaded by a preponderance of the evidence that given the totality of the circumstances, this is an exceptional case that warrants an award of attorneys' fees.

Finally, DriverReach argues that Tenstreet failed to comply with the Court's Protective Order. Tenstreet responds that the Protective Order did not require it to produce source code without a formal document request. In truth, the Protective Order outlined a detailed process for how the parties were to handle the production of source code, (s*ee* ECF No. 42 at 6–10), separating out the processes for handling confidential and executable source code. "Nothing in [the] Protective Order prevent[ed] executable source code from being requested and produced in discovery." (ECF No. 42 at 7.) While it is true that Tenstreet was not required to produce source code, Tenstreet was obligated to act in good faith upon a request of production of its source code. Here, DriverReach requested to view, in accordance with the Protective Order, Tenstreet's source code and offered up its source code for Tenstreet to view. (ECF No. 96-17 at 5.) Tenstreet refused, stating that the source code was not relevant to the litigation. (ECF No. 96-17 at 3–4.) But the source code was relevant in this, a software case, and Tenstreet did not act in good faith in complying with the Protective Order once DriverReach requested to view Tenstreet's source code.

Upon examination, DriverReach's remaining arguments are also unpersuasive. Tenstreet's litigation conduct may not have been the gold standard for how a party should conduct itself in litigation. However, even though some of Tenstreet's conduct could be criticized, considering the totality of the circumstances, its conduct throughout the brief course of this case did not amount to egregious behavior, such as false testimony, destruction of evidence, or offensive conduct, as in other cases in which courts have found exceptionality based on litigation conduct. *See, e.g.*, *Monolithic Power*, 726 F.3d at 1366 (plaintiff offered false testimony, attempted to cover up its false testimony, and, over the course of ten years, sued the same accused infringer's customers to prompt a declaratory judgment action from the supplier, only to move to dismiss the cases "after substantial litigation had taken place"); *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1324–27 (Fed. Cir. 2011) (plaintiff had a history of filing identical patent infringement complaints against a plethora of defendants to extract nuisance value settlements, destroyed evidence prior to filing suit, failed to engage in the claim construction process, and displayed a "lack of regard for the judicial system"). The Court does not find that Tenstreet's conduct makes this an exceptional case warranting a fee award.

In sum, DriverReach has not demonstrated by a preponderance of the evidence that this case "stands out from others with respect to the substantive strength of [Tenstreet's] litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. Accordingly, the Court finds that this

17

case is not exceptional under § 285 and therefore denies DriverReach's motion for attorneys' fees, (ECF No. 94).

### IV.     Motion to Strike

DriverReach moves to strike Tenstreet's five late-filed declarations, (ECF Nos. 114–18), or in the alternative allow it to take related discovery. (ECF No. 120.) It is undisputed that Tenstreet's five declarations were untimely filed. (*See* ECF No. 93 (setting final deadlines).) However, although the Court considered the untimely filing of the declarations for purposes of evaluating the quality of Tenstreet's litigation conduct, the Court did not use the substance of Tenstreet's declarations, (ECF No. 114–18), in determining the outcome of DriverReach's motion for attorneys' fees. Accordingly, with the attorneys' fees motion now resolved, DriverReach's motion to strike, (ECF No. 120), is denied as moot.

### V.     Conclusion

For the reasons set forth above, DriverReach failed to prove by a preponderance of the evidence that this case is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. Considering the totality of the circumstances here, the Court finds that this case is not exceptional under 35 U.S.C. § 285. Defendant DriverReach's motion for attorneys' fees, (ECF No. 94), is **denied**. DriverReach's motion to strike, (ECF No. 120), is **denied as moot**.

**SO ORDERED.**

Date: 8/23/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to counsel of record